Roger Dale HESTER, Appellant,

v.

The STATE of Texas, Appellee.

Randall Lewis NYMAN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 49924–49929.

Court of Criminal Appeals of Texas.

Dec. 8, 1976.

William E. Bender, Seguin, for Roger Hester.

Malcolm C. Halbardier, San Antonio, for Randall Nyman.

Ted Butler, Dist. Atty., Charles T. Conaway, Lucien B. Campbell and Susan D. Reed, Asst. Dist. Attys., San Antonio, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

In a single trial before the court, a jury having been waived, both appellants were convicted of two murders and one burglary of a private residence at night. Punishment was assessed at life for each murder and sixty years for each for the burglary of a private residence at night.

On original submission, the appeals were abated because the trial court failed to file sufficiently detailed findings of fact and conclusions of law on the disputed fact issue regarding the voluntariness and admissibility of the confessions of appellants. The court was directed "to reduce to writing his findings on the disputed fact issues surrounding the taking of appellants' confessions raised in the grounds of error challenging the court's ruling on their admissibility, and to file with this Court his certificate reciting those findings." See *Hester and Nyman v. State*, Tex.Cr.App., 535 S.W.2d 354. A supplemental transcript has now been filed reflecting such findings and conclusions. The appeals have been reinstated, and are now properly before us for our consideration and disposition. See *McKittrick v. State*, Tex.Cr.App., 541 S.W.2d 177.

Considering the evidence in the light most favorable to the convictions, the record reflects that shortly before midnight February 1, 1973, both appellants acting together as principals burglarized the private residence of Walter Bennett in Helotes, Bexar County, taking therefrom personal property including a color television set and other household goods by loading these articles in a Ford van. While headed back toward San Antonio in the van, with appellant Nyman driving, they were stopped for investigation of license plates by deputy sheriffs Vincent Walker and Joshua Rodriquez. Walker in a radio message to his dispatcher sent at 12:32 a. m. inquired of license No. LKK–528 on a van or bus type vehicle. The dispatcher received no further request or report from the officers. At 12:42 a. m. the dispatcher received a call from an unidentified person stating that "two of our officers had been shot in the vicinity of Bandera Road and Huebner Road." The dispatcher had learned that license LKK–528 belonged to a 1964 Ford van. He broadcast a call for all officers to be on the lookout for a 1964 Ford

van bearing license LKK–528 "possibly wanted in the shooting of two Bexar County officers." Officer Golding, while on patrol, heard the radio message received by the dispatcher concerning the two officers, and arrived near the intersection of Huebner and Bandera 42 seconds thereafter. He found the bodies of Officers Walker and Rodriquez, both of whom had been shot. Their car was nearby with the headlights burning. A lighted flashlight was near Walker's body. Walker's pistol was in its scabbard which was buckled closed. Rodriquez's pistol was in his hand. The record discloses that Officer Walker was shot with a .38 caliber pistol by appellant Nyman while the officer was approaching the driver's side of the van. Officer Rodriquez was shot in the temple by appellant Hester with a .22 caliber pistol while approaching the van on the passenger's side. Both officers died as the result of these gunshot wounds.

On appeal, appellant Roger Dale Hester complains (1) of the admission in evidence of his written confession; (2) of insufficiency of evidence to sustain the conviction in the two murder cases; (3) of the State being permitted "to carve more than one offense of murder with malice arising out of and from the same transaction and occurrence;" (4) of the failure to prove venue in the murder cases; (5) of insufficient evidence to prove his guilt in our Cause No. 49,926, trial court No. 73–CR–305A of burglary of a private residence at night; (6) of the court's overruling his motion to suppress evidence obtained by virtue of an illegal search warrant; (7) of cumulating the punishment in his three convictions.

Appellant Randall Lewis Nyman makes the contention of reversible error (1) in the admission in evidence of his written confession; (2) because of insufficiency of evidence to support his conviction of burglary of a private residence at night (our Cause No. 49,929, trial court No. 73–CR–305–B); (3) in that his confession of murder was not corroborated by other evidence; (4) in permitting the State to carve more than one offense "where the evidence shows that the same was one continuing criminal episode;"

(5) in the action of the trial court in cumulating the punishment.

## APPEALS OF APPELLANT ROGER DALE HESTER

Prior to the admission of any evidence at the guilt phase, the court conducted a hearing to determine the admissibility of the written confession of both appellants. Following the introduction of evidence by all parties, the transcribed record of which covers 430 pages, the court overruled the motions to suppress, and ruled the confessions to be admissible. The court's findings and conclusions concerning the taking of appellant Hester's confession are as follows:

### "FINDINGS OF FACT

"The Court finds beyond a reasonable doubt that:

"1. The defendant was arrested at his residence by Bexar County Sheriff's officers between 6:00 and 7:00 a. m. on February 2, 1973, after officers armed with a search warrant had discovered stolen property on the premises. The defendant was not interrogated at the time of his arrest, but was warned of his rights prior thereto by Sheriff's Investigators Bob Lew and Edgar McGraw. Following his arrest, the defendant was transported to the Bexar County Sheriff's Office.

"2. Thereafter, on the aforementioned date, between 8:30 and 9:00 a. m., the defendant gave a confession to Investigator Lew. Before taking the confession Lew again warned the defendant of his constitutional rights by reading to him the printed warning at the top of the confession form. The confession taken by Lew was left unsigned by the defendant because at approximately 10:00 a. m., when the defendant was reading the typed confession, another Sheriff's investigator, Alvin Johnson, entered the room and began talking to the defendant. The defendant, however, never refused to sign the statement taken by Lew, nor did he ever indicate to Lew that he wanted an attorney.

"3. Prior to his interview with the defendant, Investigator Johnson also read

the defendant the warning which appears at the top of the printed confession form. Johnson gave the defendant this warning at 10:00 a. m. and advised him in compliance with Article 38.22, V.A.C.C.P., that he had the right to have a lawyer present to advise him prior to or during any questioning; that if he was unable to retain a lawyer, he had the right to a court-appointed attorney to advise him prior to or during any questioning; that he had a right to remain silent; that any statement that he might make could be used in evidence against him; that if he decided to speak with anyone, he could terminate questioning at anytime; that the foregoing rights were continuing rights and could be urged by him at any stage of the proceedings. During the next thirty minutes, as he was interviewing the defendant, Johnson permitted the defendant to use the phone. The defendant told Johnson he was trying to call his brother. After several unsuccessful calls, the defendant said to Johnson, 'Okay, I'll just go ahead and give you the confession.' At approximately 10:30 a. m., Johnson began typing a second confession as the defendant answered his questions. The confession was completed in about thirty minutes. Johnson then read the confession to the defendant who signed the confession at 11:00 a. m. Dudley Bradley and Andrew Berlanga witnessed the defendant's signature and affixed their own signatures to the bottom of the confession. At the time he interviewed the defendant and took his confession, Johnson had no knowledge whether the defendant had an attorney to represent him.

"4. Investigator Johnson did not induce or coerce the defendant to make and sign his confession through force, threats, persuasion, intimidation, or promises, or any combination thereof. Rather, the defendant acted freely and voluntarily in giving Johnson his confession, which Johnson typed after the defendant had knowingly, intelligently, and voluntarily waived his rights under Article 38.22, V.A.C.C.P., including his right to the assistance of counsel. The confession was signed by the defendant freely and voluntarily.

"5. Further, the defendant voluntarily gave his confession without force, threats, persuasion, intimidation, or promises on the part of any other person, either prior to or during the time he made and signed the same.

"6. At no time on the aforementioned date did the defendant advise sheriff's officers that he wanted an attorney present, nor did he tell them that he was expecting the arrival of a lawyer to assist him.

"7. At no time on the aforementioned date did the defendant request sheriff's officers to cease interrogating him.

"8. At no time did the defendant refuse to sign the confession taken by Investigator Johnson.

"9. Although attorney Terrence Willis appeared at the Sheriff's Office in defendant's behalf at approximately the time he signed the confession given to Johnson, Willis was never denied access to his client. No member of the Sheriff's Office or any other person in authority told Willis he could not see the defendant or wilfully prevented him from seeing the defendant.

"CONCLUSIONS OF LAW

"The Court concludes as matter of law that:

"1. The defendant after repeated warnings knowingly, intelligently, and voluntarily waived his rights under Article 38.-22, V.A.C.C.P., including his right to the assistance of counsel.

"2. The defendant's confession was not the product of force, threats, persuasion, intimidation, or promises, but was freely and voluntarily given.

"3. The defendant's voluntary confession was therefore admissible in evidence as a matter of law."

Appellant's argument that the evidence fails to show that his confession was freely and voluntarily given is based on his contentions (1) that appellant was not taken before a magistrate prior to making the

confession, as provided by Art. 15.17, V.A.C. C.P., and (2) that the evidence fails to show that appellant made and signed the confession "with a knowledgeable waiver of the right of counsel" and that in fact he was "denied the right to the effective assistance of counsel."

The record reflects that appellant Hester was arrested at his home about 5:00 or 5:30 a. m. where officers were executing a search warrant for the property stolen from Bennett's home. At that time he was advised of his *Miranda* and statutory rights[1] by Officer Lew and by Officer McGraw. He was then taken to the sheriff's office. Officer Lew next saw Hester about 8:30 or 9:00 a. m., when he again read and explained to him his rights, reading from the confession form. Appellant Hester made no mention of wanting a lawyer and, waiving his right to counsel, confessed to Lew that he committed these offenses with his co-principal Nyman. Lew typed the confession and showed it to appellant. At this time about 10:00 a. m. Sheriff's Criminal Investigator Alvin R. Johnson entered the room. Johnson was a long time friend of Hester, having been his barber before becoming a deputy sheriff. Without knowing that Lew had obtained a statement, Johnson asked him to leave, and Johnson then read to appellant his *Miranda* rights. Appellant asked permission to use the phone, and made several calls, but made no mention of trying to contact a lawyer. He then said "Okay, I'll just go ahead and give you the confession," and proceeded to do so. This was taken down and typed, and appellant, after reading it in the presence of Johnson and a secretary and other witnesses, signed it. Johnson testified that at no time did appellant mention wanting a lawyer, although he had been advised of his right to have one, either employed or court-appointed, and that appellant voluntarily made and signed the confession without any force being used or threats or promises made. Johnson testified the confession was signed at approximately 11:00 a. m. on February 2nd.

Appellant testified he understood the warning that was given by Officer Johnson, but denied having waived the presence of legal counsel, and testified that he told Officers Lew and Johnson that he wanted to have a lawyer before making the statement. He said a secretary was present when he advised Johnson of such desire. The secretary who was present testified she heard no such request. There was no testimony from appellant or any other witness of any force or violence used, or any threats or promises made, and no such contention is made on appeal.

Attorney Terrence A. Willis testified that at about 10:30 a. m., at the request of Beryl Hester, appellant's brother, he called Chief Deputy Sheriff Garza and stated he represented appellant, and asked that all questioning of him be stopped. Garza responded that the attorney would have to come to the office before anything could be done. Willis and Beryl Hester arrived at Garza's office at approximately 10:55 a. m. After telling Garza that he represented Hester, and wanted to see him, Garza left to check with other officers. Willis testified that in a few minutes he followed and about twenty-five minutes later he saw appellant being taken to the magistrate's office after having given the confession. The evidence reflects that Willis was acting solely at the request of appellant's brother.

Chief Deputy Sheriff Garza testified that when Willis called he told Willis that anyone could call and say he was a lawyer and that there were two lawyers already claiming to be appellant's attorney, and "he should come on down to the office because I didn't know who it was on the phone." When Willis and Beryl Hester arrived at his office, he talked with them and then took them to see Captain Morin, who was in charge of the investigation. Garza did not remember what time this occurred, but testified it was about the time appellant and Officer Johnson came from the interrogation room to go to Judge Gutierrez for formal charges to be filed.

---

1. The warning is in the record, and complies with *Miranda* and Art. 38.22, V.A.C.C.P.

In addition to the above, the opening paragraph of the confession reads:

"I, Roger Dale Hester, after first being duly warned by Alvin R. Johnson, at 10:00 Am. (sic) at Bexar Co. Sheriff's Department on Feb. 2–73 that I have the right to have a lawyer present to advise me either prior to any questioning or during any questioning; and that if I am unable to employ a lawyer, I have the right to have a lawyer appointed to counsel with me prior to or during any questioning; and that I have the right to remain silent and not make any statement at all; and further, that any statement I make may be used in evidence against me at my trial; that if I decide to talk with any one, I can, and that I can stop talking to them at any time I want. The above rights are continuing rights which can be urged by me at any stage of the proceedings, and I do hereby voluntarily waive these rights and give to the said Alvin P. Johnson the person to whom this statement is being made, the following statement:"

In *Harris v. State*, Tex.Cr.App., 516 S.W.2d 931, at page 936, we said:

"The mere signing of a boilerplate statement to the effect that an accused is knowingly waiving his rights will not discharge the prosecution's burden of showing waiver, but is a factor to be considered in determining if the accused affirmatively waived his rights. See *McCandless v. State*, 425 S.W.2d 636 (Tex.Cr.App.1968); *Torres v. State*, 422 S.W.2d 741 (Tex.Cr.App.1968) (Concurring Opinion)."

See also *McKittrick v. State*, Tex.Cr.App., 541 S.W.2d 177; *Pete v. State*, Tex.Cr.App., 471 S.W.2d 841.

■ In the instant case, we have more than the "boilerplate" statement in the confession. Officer Johnson testified that after appellant had been told of his rights on a number of occasions, including just before he made his confession, he used the telephone several times and then said: "Okay, I'll just go ahead and give you the confession." Officer Lew testified to the willing-

ness of appellant to make his confession after having his rights thoroughly explained to him. Appellant testified that the officers explained his rights to him, and that he "understood the warning that was given him by Officer Johnson." The testimony of Officer Garza and others as well as Johnson reflected that appellant was not denied the right to see counsel before executing his confession, and that the right to counsel was waived.

In *Miranda*, the majority opinion stated that "an express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver." See *Charles v. State*, Tex.Cr.App., 424 S.W.2d 909, dissenting opinion, page 914.

■ The trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. It found from the evidence that

"6. At no time on the aforementioned date did the defendant advise sheriff's officers that he wanted an attorney present, nor did he tell them that he was expecting the arrival of a lawyer to assist him.

\*    \*    \*    \*    \*    \*    \*

"9. Although attorney Terrence Willis appeared at the sheriff's office in defendant's behalf at approximately the time he signed the confession given to Johnson, Willis was never denied access to his client. No member of the sheriff's office or any other person in authority told Willis he could not see the defendant or willfully prevented him from seeing the defendant."

The evidence is sufficient to reflect that the State sustained the heavy burden of proving a waiver of appellant's right of counsel, and we find the evidence sufficient to support the findings and conclusions of the trial court.

■ Appellant's contention that his confession was inadmissible because he was not taken before a magistrate prior to mak-

ing it, as provided by Art. 15.17, V.A.C.C.P., is without merit. Unless there is a showing that there is a causal connection between the failure to take the defendant before a magistrate and the giving of the confession, the validity of the confession is not affected by such failure. *Shadrick v. State*, Tex.Cr. App., 491 S.W.2d 681; *Dunlap v. State*, Tex.Cr.App., 462 S.W.2d 591; *Easley v. State*, Tex.Cr.App., 448 S.W.2d 490. There was no such showing in the instant case.

The trial court did not err in overruling appellant Hester's motion to suppress his confession.

In connection with the other contentions of appellant Hester, the record, in addition to the recital of facts made earlier, reflects as follows:

Patrolman Ernest Aguilera while on patrol in his police car heard the radio calls concerning the shooting of the two deputies, and was on the lookout for the 1964 Ford van with license No. LKK–528. About 1:00 a. m. he saw it, noticed the license number, and followed it for a distance. As he followed, he clocked it at one hundred miles per hour. He turned on his flashing lights and was successful in catching up and stopping it. Inside the van was appellant Nyman, his wife and baby. Nyman and his wife were placed under arrest.

Later that morning, about 4:00 o'clock, on information received from Mrs. Nyman, Officers Carreon, Mendoza and Lew went to the home of appellant Hester. Carreon and Mendoza went to the front door and knocked, while Lew stayed at the car. Mrs. Hester opened the door and invited them in. Lew followed the other officers into the home. Appellant Hester was in the house. No immediate search of the house or arrest of Hester was made but the officers waited for a search warrant which they were advised by Officer Johnson was being prepared.

In the meantime, Mrs. Nyman had made a statement to Officer Johnson, saying that the articles stolen at Helotes had been taken by her husband and Hester to Hester's home. Based on the information thus received from his informant Mrs. Nyman, and with legal advice from assistant district attorney Conaway, Johnson prepared an affidavit and presented it to Justice of the Peace Gutierrez, who found the affidavit furnished adequate probable cause for a search warrant. This search warrant was executed by Officer McGraw with the assistance of Lew and others. A search of the home produced a number of items identified as having been stolen from Bennett's home in Helotes earlier that night. Also found under a mattress was a .38 caliber pistol. Upon the completion of the search, appellant Hester was arrested and taken to the sheriff's office, where he later made his confession.

The affidavit of Officer Johnson based on the information given by the wife of appellant Nyman in which she was named as the informant and the search warrant are included in the record. We have examined the affidavit and find that the allegations sufficiently furnished probable cause for the issuance of the search warrant. See *Woods v. State*, Tex.Cr.App., 533 S.W.2d 16; *Frazier v. State*, Tex.Cr.App., 480 S.W.2d 375. All contentions of appellant alleging illegality of the search are overruled.

Omitting the opening paragraph which sets forth the warning given, appellant's confession in evidence reads:

"I want to state that on Thursday Feb. 1st 1973 I was at home at 7503 happy (sic) Valley San Antonio, Texas with my wife Norma and two children Randy and his wife Cynthia came over, this was about 8:00 PM. Randy last name is Nyman. He was driving his green Ford Van. We drank a few beers. I drank two at home and two after we left.

"At about 8:30 PM. Randy and I left my house in his ford (sic) van. Randy drove. We went north on Bandera Rd. turned right on a paved road before we got to Helotes. We went down it about a half mile. We stopped at a house on the right side of the road. This house is a one story house. We broke the back door and took some items. We took them to my

house dropped them off and went back for some other things.

"On the way back from the location off Bandera road (sic) the second time it was about 12:30 Am. Just as we were comming (sic) into Leon Valley a Police car turned his red lights on behind us. Randy stopped. I looked out the of the van (sic) and the lights were too bright to see anything. Randy fired a shot out the drivers side of the van while he was still inside. I didn't see an officer. At that time I lost my head and started to jump out but thought I would be shot. I had a 22 cal. revolver and took it in my right hand and started shooting it out the passenger side of the van. I didn't see an officer out side the van on my side but I was firing to keep one from comming (sic) up on it. I was just waving it around and firing it. I don't know just haw (sic) many times I shot but it was several. After the first shot that Randy fired I didn't here (sic) him shoot any more. There was so much noise that he could have and I didn't here (sic) it.

"All I ever saw was the bright lights. I didn't see anyone on the ground Randy took off and drove fast toward SA. on Bandera Rd. I don't know just how Randy got home. Some where shortly after we left the scene I saw some flashing red lights and I got scared and opened the door and and (sic) dropped the pistol. We went on home.

"The above statement was given to sheriff's investigator Alvin R. Johnson of my own free will and accord. I was not threatened or mistreated. The above is the truth as to what I know and it all took place in Bexar Co. Tex."

Additional testimony was given by Walter Bennett, who testified that his private residence in Helotes, Bexar County, used by him as such was burglarized on February 1, 1973, and identified certain personal property found in Hester's home during the search later that night as being some of the stolen property; by Dr. Rueben Santos, who testified to the bullet wounds causing the death of the two officers; and

by a ballistics expert, who testified that a test made by him reflected that a bullet fired from the .38 caliber pistol found in the Hester home matched the bullet taken from the body of deceased Walker, and that Rodriquez's death was caused by a .22 caliber bullet. Evidence further showed that the place where the bodies were found was in Bexar County. Appellant's contentions that venue in Bexar County was not proved and that the pistol was erroneously admitted in evidence are without merit.

Appellant Hester also complains of the sufficiency of the evidence to support his conviction of either murder, and also of the burglary. He argues that there was insufficient evidence to establish his guilt as a principal with Nyman in the shooting of Officer Walker, and no evidence corroborating his confession to show that he shot Officer Rodriquez, or that he intended to shoot him, or that he acted with malice. He also argues that the evidence was insufficient to prove his participation in nighttime burglary of the private residence of Bennett.

In *Self v. State*, Tex.Cr.App., 513 S.W.2d 832, we held that where the State establishes the corpus delicti of the crime by other evidence the defendant's confession of the offense, unaided by other evidence, is sufficient to prove guilt. See also *Brantley v. State*, Tex.Cr.App., 522 S.W.2d 519. The corpus delicti of these murders consisted of (1) the bodies of the deceaseds being found and identified, and (2) the deaths were proved to have been caused by the criminal acts of another. *Self v. State*, supra. In his confession appellant stated that Nyman fired a shot from the driver's side of the van. The evidence disclosed that the body of Walker was found on that side and that he was shot by the .38 pistol found under a mattress in appellant's home. While appellant did not admit shooting at deceased Rodriquez, he did admit that after leaving a house he and Nyman had just burglarized in the van loaded with stolen goods and upon being stopped by a police car with red lights, he fired a number of shots with a .22 pistol from the passenger side to keep an

officer from coming up on it. It was on that side of the car that the body of Officer Rodriquez was found shot in the head with a .22 caliber bullet. Thereafter both appellants fled from the scene of the shooting in the van.

In connection with this appellant's claim that intent to kill and malice were not established, we quote as follows from *Canedy v. State*, Tex.Cr.App., 507 S.W.2d 743:

> "Appellant's argument that there was no showing of ill will existing between the appellant and the deceased is best answered in the words of Judge Lattimore in *Banks v. State*, 85 Tex.Cr.R. 165, 211 S.W. 217, where he said:
>
> " 'Of kindred spirit is he who can shoot in the darkness into houses, crowds, or trains and recklessly send into eternity those whom he does not know and against whom he has no sort of reason for directing his malevolence.' "

■ As for his contention that the evidence does not support his conviction for burglary of a private residence at night, the record, in addition to the confession and the testimony of Bennett, the owner of the home in Helotes, Bexar County, reflects that the property stolen from that residence that night was, within a few hours, found in appellant Hester's home.

■ The evidence is abundantly sufficient to establish that appellants Hester and Nyman were acting together as co-principals in the commission of the burglary and the two murders, and to support his convictions of those crimes.

■ Appellant's contention that the trial court erred in permitting the State to carve more than one offense of murder out of and from the same transaction and occurrence is without merit. The killings involved two separate killings, with two victims, each being shot separately from the other. The doctrine of collateral estoppel or carving does not apply to the facts of these cases. See *Waffer v. State*, Tex.Cr.App., 504 S.W.2d 408; *Jones v. State*, Tex.Cr.App., 502 S.W.2d 164; *King v. State*, Tex.Cr.App., 502 S.W.2d 800; *Scott v. State*, Tex.Cr. App., 490 S.W.2d 578; *Bradley v. State*, Tex.Cr.App., 478 S.W.2d 527.

■ Appellant contends that the court erred in cumulating the sentences in his cases. The trial court is vested with the discretion to order two or more sentences to operate either concurrently or consecutively. Art. 42.08, V.A.C.C.P.; *Banks v. State*, Tex.Cr.App., 503 S.W.2d 582; *Christopher v. State*, Tex.Cr.App., 489 S.W.2d 575. No abuse of discretion is presented.

The judgments from which appellant Hester appeals are affirmed.

## APPEALS OF APPELLANT RANDALL NYMAN

Appellant Nyman complains of the court's action in overruling his motion to suppress his confession and in admitting his confession in evidence. His contentions are that the evidence fails to show his confession was voluntarily made; that he was not, prior to making his confession, taken before a magistrate as provided by Art. 15.17, V.A. C.C.P.; that the confession was made without "a knowledgeable waiver of the right of assistance of counsel; and that he was denied the right to effective assistance of counsel by the sheriff's department when his attorney, Charles Wright, came to the offices of the sheriff's department prior to this appellant affixing his signature to the written confession."

The evidence introduced at the *Jackson v. Denno* hearing[2] reflects, and the court found,[3] that appellant was given his *Miranda* warning by Officers Aguilera and Johnson at the scene of his arrest between 1:30 and 2:00 a. m. February 2nd. He was not interrogated at this time, but was taken to

---

**2.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

**3.** The court's findings and conclusions as to warnings given, rights waived, and voluntariness of confession were substantially the same as those concerning Hester's confession with

certain different times of day and names of officers. The opening paragraph of Nyman's confession reads the same as that of Hester's, with differences only in time and names.

the sheriff's office. He was given the warning again about 9:30 or 10:00 a. m. by Deputy Sheriff Jesus Mendoza. This appellant then told Sheriff's Lieutenant Carreon that he desired to make a statement. He was permitted to make a phone call to an unidentified person, and at about 10:25 a. m. Officer Lew was assigned to take his statement. Lew read him the warning from the top of the confession form, including, as shown by the evidence and found as a fact by the court, his right to have a lawyer present or, if he did not have a lawyer or was unable to employ one, his right to have counsel appointed by the court. After being advised of his rights, appellant told Officer Lew that he understood these rights and that he willingly waived them, and proceeded to make his voluntary confession, which Lew reduced to writing. Appellant read the confession taken by Lew and signed it in front of witnesses at 10:50 a. m. The trial court's findings embrace the above facts, which are fully supported by the evidence. With particular reference to complaints of appellant on appeal, the trial court found:

"6. At no time on the aforementioned date did the defendant advise sheriff's officers that he wanted a lawyer present nor did he ever inform them that he was expecting a lawyer to arrive and assist him.

\* \* \* \* \* \*

"9. Although attorney Charles M. Wright appeared at the sheriff's office in defendant's behalf, Wright was never denied access to his client. No member of the Sheriff's office nor any other person in authority, told Wright he could not see the defendant or willfully prevented him from seeing the defendant."

Although there were some discrepancies between the testimony of State's witnesses and defense witnesses, the trial court was the sole judge of the credibility of the witnesses and the weight to be given their testimony. The evidence reflects that attorney Wright first appeared at the sheriff's office at 10:40 a. m. at which time appellant was giving his confession in another part of the office. He first went to the hold-over cell, which, he testified, was "surrounded" by newspaper reporters and officers. When he was able to inform an officer in authority that he was the attorney for Nyman and wanted to speak with him, he was taken to see appellant.

At this time, 10:54 o'clock, appellant had signed his confession and was being taken to the Justice of the Peace office.

We find the findings and conclusions of the trial court as to warnings given, rights waived, and voluntariness of the confession fully supported by the evidence. The court did not err in overruling appellant's motion to suppress his confession.

Appellant Nyman complains of insufficiency of the evidence to support his conviction in the burglary case (our No. 49,929). We quote as follows from his written confession:

"I wish to state that on February 1, 1973, which is a Wednesday, at about 8:30 P.M., I arrived at Roger Dale Hester's house at 7503 Happy Valley in San Antonio with my wife and child. I had driven to the house in a blue Ford van with license number LKK 528 on Texas plates. At Roger's house, I drank a few beers and I then called a phone number that I looked up in the phone book of a house that I had seen. They answered so I and Roger than (sic) left Roger's house in my Blue van looking for a house to break into. I drove out to Helotes, Texas and then we found a house there and got into it. It was on Rafter S Trail and we broke in through the back garage door. Roger and I went into the house and stole a Curtis Mathis color television and 4 dining chairs and one big chair. We loaded these into my van and then drove back to Roger's house and unloaded the items and we then stayed at the house for about thirty minutes and then Roger and I decided to go back to the house again. We left Roger's house again at about 11:00 P.M. and went back Rafter S. Trail and this time, we took one more dinette chair and the table. We also took another liv-

ing room chair. We loaded these items into my van and I was driving and I was driving on Hwy 16 going towards San Antonio when I saw a cop car in front of us. The cop car then pulled over and I kept on driving towards San Antonio and the cop car then pulled behind us. The cop car followed us for about 2 or 3 miles and then put on the flashing lights. I then pulled over of (sic) the road near a nursery and this was on Bandera Road before you get to Leon Valley. I then saw 2 officers get out of the cop car and one officer was walking up to my van on each side. I was in the driver's seat and Roger Hester in the front passenger side. Roger and I agreed to shoot it out with the officers. I had a 38 caliber pistol. It was a Liberty Chief make. Roger had a 22 caliber old pistol with white handles. As the two officers walked up to the van, I shot twice at the officer on my side. Roger shot at least four times. He (Roger) was right handed so he had to open the door to be open to shoot. After we shot, we took off and I then drove straight to Roger's house. Roger wanted to leave. At Roger's house, I help unload the stolen items and then I gave my 38 pistol to Roger Hester and then took my wife and Child and left and we were then stopped by some more cops."

As heretofore stated, the owner of the burglarized house in Helotes testified that his private residence was burglarized on February 1, and he identified the household furniture found in the Hester home during the early morning hours of February 2nd as being property stolen in the burglary. The evidence is amply sufficient to sustain his conviction of burglary of a private residence at night.

Appellant Nyman's remaining contentions, being that his confession of murder was not corroborated by other evidence, that the court erred in permitting the State to carve more than one offense from this one continuing criminal episode and that the court erred in cumulating the punishment, are overruled for the same reasons heretofore given in overruling similar contentions of appellant Hester.

Reversible error is not presented. The judgments of conviction of appellant Randall L. Nyman are affirmed.

Opinion approved by the Court.