**Richard D. SMITH, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 56072.**

Court of Criminal Appeals of Texas.

Dec. 7, 1977.

Dissenting Opinion On Denial of Rehearing Nov. 15, 1978.

James H. Kreimeyer, Belton, for appellant.

Bobby L. Cummings, Dist. Atty. and Leslie Vance, Asst. Dist. Atty., Gatesville, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for capital murder, with punishment fixed at death. Appellant was indicted and charged with intentionally causing the death of Travis Russell Durham by cutting his throat with a knife during the commission of the offense of burglary. In view of our disposition of this appeal, further discussion of the facts is not necessary.

Appellant contends the trial court erred in failing to grant his challenge for cause to the twelfth juror seated, Leo Franklin Payne, in that Payne had stated that he could only consider assessing the penalty of death in a capital murder case. The record adequately reflects that the appellant exhausted fifteen peremptory challenges allotted him pursuant to Art. 35.15(a), V.A.C.C.P. and an additional peremptory challenge granted him by the trial court. The record reflects as well that Payne did sit in the case. Thus, a reversal will be warranted if it is established that a sufficient challenge for cause was overruled. *Bell v. State*, 137 Tex.Cr.R. 401, 129 S.W.2d 664; *Story v. State*, Tex.Cr.App., 502 S.W.2d 764.

Article 35.16(c)(2), V.A.C.C.P., provides that a challenge for cause may be made by the defense for the reason that the juror "has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely, either as a defense to some phase of the offense for which the defendant is being prosecuted or as a mitigation thereof, *or of the punishment therefor.*" (Emphasis added.)

In *Woodkins v. State*, Tex.Cr.App., 542 S.W.2d 855, we held, "[T]he appellant [has] the right to challenge for cause any juror who could not give the minimum punishment. Both the appellant and the state [have] the right to have jurors who believe in the full range of punishment." See also *Huffman v. State*, Tex.Cr.App., 450 S.W.2d 858. Thus, if it is established that the appellant was forced, over objection, to have a juror sit on his case who could not consider the full range of punishment, a reversal of the cause would be warranted.

During the course of the voir dire examination of prospective juror Payne, he stated explicitly that he would not consider the punishment of life imprisonment if appellant were found guilty of capital murder:

"Q. Then, you really wouldn't consider life—you wouldn't even consider it?

"A. That's right."

At several points he expressed his belief that death should be the penalty for taking a life:

"I feel very strongly if a person, after pushing to take somebody's life, he should—give his life."

"[If] a person actually took another person's life then he should . . . give his life for another person's life."

"I've always felt that way about it, I feel that if somebody knowingly takes some[one] else's life . . . then they should be willing to forfeit theirs."

The juror stated that he held his view that death would be the only proper punishment as a firm conviction and that he could not be swayed or persuaded from that position. When asked whether he could consider a punishment of life imprisonment, he stated that they are turned loose too quickly and that murderers who are given a life sentence are "back on the streets in a few years and [do] it all over again."

Although during an effort by the trial court to rehabilitate the prospective juror he did state that he could consider both penalty options by answering the questions under Article 37.071(b), V.A.C.C.P.,[1] as the law requires, his answers were equivocal and ambiguous in contrast to his earlier statements that demonstrated an unwillingness to consider life imprisonment. The overall picture presented by the voir dire examination of Payne is one of a person holding strong convictions that death is the only punishment he could consider for a person guilty of capital murder, and that life imprisonment is not adequate punishment and would not be considered.

In overruling the appellant's challenge for cause, the trial court appears to have reasoned that Payne was cognizant of the two phase trial procedure and of the questions submitted to the jury pursuant to Art. 37.071(b), V.A.C.C.P., and since he testified that he could follow the court's instruction that a "Yes" answer would be warranted to each question submitted at the penalty stage only upon a finding from the evidence beyond a reasonable doubt, that this was sufficient indication of Payne's willingness to consider the alternative penalty of life imprisonment. Payne had testified on several occasions that he realized that a "No" answer to any of the questions by any of the jurors would result in the automatic imposition of a life sentence. Defense counsel remarked in his objections to the court that:

"We (the defense) have the right to know whether he can consider the full range of punishment, just as the state does and he has—the juror has testified that he cannot consider the minimum punishment in a capital murder case and if nothing else, we feel that that will have a definate (sic) effect on his answering the final questions as the statutes set out and we would challenge the juror for cause. . . ."

The question to be resolved is the following: does the fact that a juror indicates that he will return a "yes" answer to the questions submitted pursuant to Art. 37.-071, supra, only upon a finding from the evidence that the state has proven each issue submitted beyond a reasonable doubt comport with the clear requirement that a defendant should have a right to be tried by jurors who will consider the full range of punishment applicable to the offense in question? We are constrained to hold that a juror's willingness to demand of the state that it prove each question submitted pursuant to Art. 37.071 beyond a reasonable doubt is not equivalent to an assertion that the juror will consider the full range of punishment for the offense in question. This is especially so in light of Payne's rather adamant assertion that life imprisonment for him would not be a viable punishment alternative.

In *Jurek v. State*, 522 S.W.2d 934, affirmed 428 U.S. 262, 49 L.Ed.2d 929, 96

1. "(b) On conclusion of the presentation of the evidence, the court shall submit the following issues to the jury:

"(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

"(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and

"(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased."

**766**

S.Ct. 2950 (1976), we held that Art. 37.-071(b) was not vague and that it did provide adequate guidance to the jury. It was further held that:

"[T]he fact that an exhaustive and precise list of factors is not specifically included (in Art. 37.071(b)) does not indicate that the jury is without adequate guidelines. We are inclined to believe that the factors which determine whether the sentence of death is an appropriate penalty in a particular case are too complex to be compressed within the limits of a simple formula. However, there are some factors which are readily apparent and are viable factors for the jury's consideration. In determining the likelihood that the defendant would be a continuing threat to society, the jury could consider whether the defendant had a significant criminal record. It could consider the range and severity of his prior criminal conduct. It could further look to the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another. It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps, than insanity, but more than the emotions of the average man, however inflamed, could withstand." at 939–940.

In that a multiplicity of viable factors are present in the consideration of the punishment for each capital murder defendant, a willingness to hold the state to prove beyond a reasonable doubt on each of the Art. 37.071(b) questions does not insure, as well, that the juror will consider the full range of punishment in a particular case. It is too mechanistic to reason that Payne was a qualified juror because he was willing to require of the state to prove beyond a reasonable doubt the special issues submitted at the punishment stage. The law requires this and in addition requires that each juror consider the full range of punishment applicable to the offense in question.

It is certainly possible that a juror could hold the state to its burden of proof beyond a reasonable doubt on the special issues submitted at the punishment stage and still not be willing to consider life imprisonment as being a viable punishment under the circumstances. It is equally erroneous to reason that a juror has met the requirement of being able to consider the full range of punishment in a capital murder case when he has indicated that he could not consider life imprisonment as a punishment alternative by relying on his statement that he knew that a "no" vote to any one of the Art. 37.071(b) questions would mean that life imprisonment would automatically be assessed as the punishment. Indeed, the juror in that case has not expressed a willingness to consider the full range of punishment alternatives but has in fact acquiesced to the clear statutory mandate. For this reason, the judgment must be reversed.

In his second ground of error appellant contends that the trial court erred in admitting his confession into evidence in that he was denied the right to counsel prior to and during the taking of the confession.

In light of the disposition of this case, we need not decide this contention. We do find, however, that the instrument filed by the trial court and denominated as "Order relating to Voluntary Nature of Statement of Accused" is inadequate to apprise this Court of the trial court's independent finding as to whether the statement was made under voluntary conditions as required by Art. 38.22(2), V.A.C.C.P. The appellant's contention is that he re-asserted his *Miranda* rights *during* the interrogation and does not question the fact that initially he was advised of his rights as required by Art. 38.22(1)(c) and *Miranda*. The trial court's findings do not address this specific contention. See *Hester v. State*, 535 S.W.2d 354, wherein we abated the appeal and directed the trial court to reduce to writing his findings on the disputed fact issues surrounding the taking of appellant's confession raised in the grounds of error. For an example of an excellent compliance with the provisions of Art. 38.22(2), see *Hester v. State*, 544 S.W.2d 129. In the event this issue is raised at a subsequent trial, we recommend that the findings made therein

comport with *Hester v. State*, 544 S.W.2d 129.

For the above reasons, the judgment is reversed and the cause remanded.

VOLLERS, Judge, dissenting to the denial of motion for leave to file a motion for rehearing.

I dissent to the denial of the State's Motion for Leave to File a Motion for Rehearing in this cause.

This cause was reversed because the trial court failed to sustain a challenge for cause as to prospective juror Payne upon the basis that he could not consider the full range of punishment if he found the defendant guilty of the offense of capital murder. My examination of the testimony of Payne on voir dire leads me to the conclusion the opinion in this cause is based upon a simplistic presentation of certain testimony, taken out of context, which does not truly reflect the basis for the trial judge's ruling that Payne was not subject to challenge for cause upon this issue. A proper discussion of this matter requires a complete examination of the voir dire examination of Payne pertaining to this issue. For this reason, I have attached all of such voir dire examination as "Appendix I" to this opinion. (All references will be to pages of this appendix.)

To set the stage it should be noted that the questioning of Payne by the prosecutor elicited his position that in a capital murder case he could follow the law and consider the full range of punishment that he thought was proper under the facts in the case (pages 768 and 769). Later questioning by the defense attorney elicited the answer set out in the Court's opinion indicating that Payne would vote only for the death penalty if he found appellant guilty of "capital murder" (page 770). However, the confusion of Payne is exhibited by his answers immediately prior to that point where he pointed out that death "shouldn't be" the only possible punishment for capital murder (page 769) and it would depend upon the evidence as to whether he could consider life as a proper form of pun-

ishment (page 770). It was only after Payne was questioned about "it" being "proved beyond a reasonable doubt" (page 770) that he indicated he would not consider a life sentence.

The trial judge then questioned Payne and explained that even after a finding of guilt as to capital murder there must be a punishment phase of the trial where two questions would be submitted to the jury. He determined that Payne would require the State to prove to his satisfaction beyond a reasonable doubt that the questions should be answered "yes" before he would answer them "yes," and if they failed to so prove beyond a reasonable doubt, the answer to the question would be "no" (pages 770–771). This was concluded with the Court's question of Payne that he understood that if either question were answered "no" the only sentence that could be assessed would be life (page 771). It was at this point that the trial court overruled appellant's challenge that Payne could not consider the full range of punishment.

After further examination of Payne by appellant's counsel, he again reurged his challenge for cause. The careful trial judge again attempted to make certain that Payne understood that where a jury found the defendant guilty of the offense of capital murder they had the option of assessing the punishment at life imprisonment or death. Payne indicated that he could consider both options available by answering the questions as the law requires (pages 772–773).

It should also be noted that the trial judge concluded from this testimony that the prospective juror Payne had stated "that he would consider both of them, he told the Court that he would consider both punishments . . . death in the electric chair or life imprisonment, depending upon what the evidence, the side reached at the punishment phase of the case" (page 773). *And the prospective juror confirmed this conclusion.*

The judge then permitted further examination of this prospective juror. This ex-

amination indicated that there was some confusion by the prospective juror Payne as to what constituted capital murder, and that capital murder included the answering of the two questions at the punishment phase (pages 774–775). An examination of this testimony and the questioning by the trial judge indicates that the trial judge understood that the prospective juror was slightly confused about the definition of capital murder. This confusion clearly explains the contradictory answers as well as the indication in Payne's previous testimony that he could not consider the punishment of life for someone who was guilty of "capital murder."

An examination of *all* the testimony given by the prospective juror clearly indicates that he was not disqualified and the trial court did not err in overruling the appellant's challenge for cause because this prospective juror could not consider the full range of punishment in a capital murder case. To reverse this case upon the basis of this record constitutes a removal of all discretion in the trial judge to determine any factual issue raised by contradictory answers of a prospective juror. Such a ruling effectively binds the trial court to accept an answer resulting from confusing and misleading questions even though the trial judge is able to see and observe the prospective juror, the questions, and the circumstances under which the testimony is given, and can clearly conclude from these circumstances that the answer does not truly reflect the feelings of the prospective juror.

Voir dire examination, especially in capital cases, has reached the point where it is far more important than the actual trial of the case. We should not encourage protracted, confusing and misleading voir dire by denying a trial judge the last vestige of discretion in a manner such as this. Where the trial judge has the opportunity to see and observe the prospective juror, listen to the questions and his responses thereto, and make the determination which this trial judge made, we simply should not second-guess him in the exercise of his discretion. As was pointed out in *Hughes v. State*, Tex.Cr.App., 563 S.W.2d 581:

"We must be mindful that where we only have a cold record before us the trial judge in passing on the answers of the 'equivocating venireman' has the opportunity to observe the tone of voice and demeanor of the prospective juror in determining the precise meaning intended."

Even if this record is construed to show a "equivocating venireman," there was no abuse of discretion by the trial judge. But the result reached by the majority in this case is clearly unwarranted where this record clearly supports his determination that the prospective juror was confused and the trial judge personally established that the prospective juror could consider the full range of punishment.

I dissent.

DOUGLAS and DAVIS, W. C., JJ., join.

### APPENDIX I

Q Now, a murder case becomes a capital murder case in one of five or six different ways and I would like to tell you how that happens. If the victim of the murder is a law enforcement officer or a fireman in pursuit of his job at that time. Then, the law classifies that, as a capital murder case for which those two punishments are the range and that's the full range, either life or death. The law also classifies murders for hire, such as if I hired someone for a certain amount of money, to kill someone else, then the law classifies that as capital murder. And, the law also classifies that if a person commits murder while he is committing or attempting to commit burglary, robbery, arson, kidnapping or rape, that this is also classified under our laws as capital murder. Now, do you understand the distinction between just plain murder and how it can become capital murder?

A Yes, sir.

Q All right. And the law also says, in a capital murder case, you must consider the full range of punishment before assessing punishment. You must consider both life imprisonment and death. Now, in a capital

769

murder case, could you follow the law and consider both punishments before assessing what you thought was proper under the facts of the case?

A Yes, sir.

Q In other words, there are some people, I'm sure, that would just think that a capital murder case, well, I think that the death penalty is the only punishment, and that's all they could consider, but you could consider both punishments, before you actually assessed what you thought was proper. If you felt like imprisonment was proper under the facts, you could assess life imprisonment, if you thought the death penalty was proper after hearing the facts, you would assess the death penalty, do I understand you—?

A That's correct.

Q All right. Now, we—I've explained murder to you for this reason. I'm sure that the court will instruct you, that in a capital murder case, that if you fail to find the defendant guilty of capital murder, that you must then consider whether he's guilty of some lesser included crime, such as murder. Now, murder being lesser included because it is a similar type crime, but it carries a lesser punishment range—possibilities.

Q Have you ever talked to anyone of your family or someone at work or anyone really, about what should be done with a person who has committed a capital offense?

A Well, I made the statement to my wife, I feel very strongly if a person, after pushing to take somebody's life, he should—give his life.

Q Well, do you have some pre-conceived notion as to—that there ought to be only one punishment for murder?

A No, no, I'm talking about—exactly knowing without a shadow of a doubt—if he is guilty or not, a person actually took another persons life then he should—the person should remember the fact—that he should give his life for another person's life.

Q Well, if I can talk with you a minute on that. You understand as the district attorney explained to you, that there are two phases of trial, as what we refer to as the guilt and innocence stage where a defendant is proven innocent or guilty and at—then at that point, if a criminal defendant in any trial, if the jury returns the verdict of guilty, they would be saying, by that verdict, that yes, they believed beyond any reasonable doubt, that beyond a reasonable doubt, that that person did commit murder or capital murder, and then, after that, there is what we refer to as the punishment stage of the trial, and what I'm saying is, do you feel like, that if you were selected as a juror, if the jury and you were participating as a member of the jury, find the defendant guilty of, say capital murder, and that wouldn't necessarily mean that in your mind as well in other people's minds, that you found beyond a reasonable doubt, that a defendant was guilty of capital murder. Do you feel like, at that point, that you have such an idea about a murder, and please understand me, no one would disagree with your opinion, no matter what it is, but at that point, there would only be, really one possible punishment, that being death that would be proper?

A It shouldn't be.

Q All right, sir. Is—is this a firm conviction in your mind?

A Well, I ought to call it firm, yes,—I've always felt that way about it, I feel that if somebody knowingly takes some else's life—

Q Yes, sir.

A —Then they should be willing to forfeit theirs.

Q All right, sir. Do you feel like it would be possible for you to consider a life sentence as a possible form of punishment in a capital murder case where—?

A I'd say, really as far as I'm concerned about a life sentence in a murder case is a capital murder—

Q Yes.

A I don't—I don't go with them too good because they turn them loose too quick.

Q All right, sir. Well, do you feel like you could really consider life as a proper form of punishment?

A Well, it would depend on the evidence—of course.

Q Well,—

A I would say this, if it was—like I said earlier, if it was proved beyond a reasonable doubt—

Q Yes, sir, well, may I stop you here—at this point, where—where we get to the point where we are talking about punishment—

A Un uh.

Q —At that point, it's been proved beyond a reasonable doubt, okay?

A Okay.

Q Now, assuming that, do you feel like that you could honestly—and only you know what's in your heart, I don't or no one else does, and really, all we are interested in is finding out, what your ideas are so we can make intelligent selection of jurors.

A Yes.

Q Do you feel like that this has transpired and—

A Yes.

Q —Okay, now you are faced with the punishment phase of the trial. Do you feel like, honestly, you could—could consider life imprisonment or a sentence of life, do you feel like that your mind—your conviction is, that at that point, your mind is made up that death would probably be, at least in your mind, the only proper punishment for the defendant that you had found guilty of capital murder?

A Yes.

Q Is this a firm conviction?

A Yes, sir.

Q You feel like you could be swayed or persuaded by someone?

A No, I wouldn't think so—it's just one of those things that—I've read what education I'm sure about, had two—murdered and then give them the life sentence and turn them back on the streets in a few years and done it all over again.

Q Then, you really wouldn't consider life—you wouldn't even consider it?

A That's right.

The Court: Let me interrupt you just a minute, counsel, because I think what we are getting astray here. You recall your questions by the district attorney and by—also by Mr. Knapp, that we have in this state what's known as the two phase system. There is two phases to the trial. Of course they've explained to you that if you find a defendant not guilty of capital murder then you, could not under any circumstances, assess anyone the death penalty. You understand that?

A Right.

The Court: However, if you did find the defendant guilty of capital murder, that that jury only has two alternatives. However, as the district attorney pointed out to you, you might have to either find death or life, you are—you will be ask two questions in any case, whatever that case is, or where ever you may serve in this state under our present law, on a case that involves capital murder. And if you found a defendant guilty of capital murder, then on the second phase of the case, the jury, as the district attorney pointed out to you, the jury would be ask two questions. Now, the first question that you would be ask, would be substantially here as follows or substantially as follows. Do you find from the evidence beyon a reasonable doubt, that the conduct of the defendant caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased—of the deceased would result. Do you understand that question?

A Yes.

Now, the best—in order to answer that yes, you have to find from—beyond—from the evidence, beyond a reasonable doubt that fact. Could you follow that instruction of the court and would you follow that instruction of the court?

A I would.

The Court: And if you failed to find from a reas—from the evidence beyond a reasonable doubt that a defendant caused the death of the deceased, deliberately and with the reasonable expectation that the death of the deceased would result, would you answer the question no, if you failed to find that beyond a reasonable doubt?

A Yes, sir.

The Court: All right, the second question, assume that you answered that question and did find in that case, that—that the answer to that question should be answered yes, you stated that you would find—so find that you thought the evidence did establish it beyond a reasonable doubt, then you would have a second question to answer. That second question would either be as follows or substantially as follows, do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Do you understand that question?

A Yes, sir.

The Court: Now, would you require the State of Texas to establish that to your satisfaction beyond a reasonable doubt, before you answer that question yes?

A Yes, sir.

The Court: And if they failed to prove to you beyond a reasonable doubt, that the answer to that question was yes, would you answer it no?

A Yes, if I had doubts on it.

The Court: If you had a reasonable doubt?

A Yes, sir.

The Court: Then, in effect, you are saying that if you—that you understand that if either of those questions were answered no, that the only sentence that this court or any court could assess in any capital case would be life—would be, therefore to your—and is it your answer that you would—is it your answer under the question that was submitted to you that you would require the state to meet it's burden of proof—burden

of proof beyond a reasonable doubt, before you would assess death as the penalty for the crime?

A Yes, sir—

The Court: All right.

Mr. Thompson: Your Honor, we still would like to challenge this juror because and point out to the court that defense, as we pointed out yesterday, the defense feels that we do have the right to ask the juror whether or not he can consider the full range of punishment and we have the right to know whether he can consider the full range of punishment, just as the state does and he has—the juror has testified that he cannot consider the full range of punishment, although he could answer those two questions if the—if the court ordered him to do so, he's testified under oath that he cannot consider the minimum punishment in a capital murder case and if nothing else, we feel that that will have a definate effect on his answering the final questions as the statutes set out and we would challenge the juror for cause.

The Court: In view of the answers that you have given the court, you have said that you could consider the full range of punishment, there being only two ranges and you are required—and you would require the state to meet it's burden of proof on both of those, beyond a reasonable doubt, is that your testimony?

A That's right.

The Court: I'll overrule your motion, counsel.

By Mr. Knapp:

Q In deciding whether to believe any witness, you've got to—you wouldn't necessarily believe a police officer simply because he was a police officer?

A Not necessarily, I might not even know he was a police officer.

Q Well, I mean even if he were in uniform?

A I'm sure that a police officer will have a certain degree of influence on anyone—

Q  Yes, sir, do you feel like you would tend to hear more truth in what a law enforcement officer said opposed to some other witness?

A  Not necessarily, but you should be able to believe them more than—

Q  Yes, sir.

A  —They are supposed to know the law.

Q  But, you can understand that law enforcement officer's are just like everyone else, that they are subject to particular biases and prejudices themselves?

A  Yes, sir

Mr. Thompson: Your Honor, before we pass judgment on this juror, we'd like to reurge our challenge on this juror and submit to the court that the defense feels we are entitled to a juror who qualified on the minimum punishment as well as the state is qu—is entitled to a juror who is qualified on the maximum punishment, expecially when talking about a capital murder case. The state had an opportunity to say, can you give the death penalty and will you give the death penalty, with nothing about those two questions that were ask of the juror, and I think we have a right to say can you give life in a capital murder case, can you consider the right in that case. This juror, as the court heard, testified that in a capital murder case, the death penalty was the only penalty to be in—that would be inflicted in the case, or it should be, that he could not consider life as a punishment in a capital murder case and the—because of that, we feel like the juror is not qualified as to the full range of punishment in the case, even though he can answer those other two questions yes, but if I've been instructed to answer those questions, only if I have a certain amount of evidence beyond a reasonable doubt, I'll answer them that way, but still, I feel like we are entitled to have him corssed out on the full range of punishment.

The Court: Well, he stated, counsel, as I understand his answer, that he—he's subject—would—would consider two range that he would answer each of those questions no if they did not, and that he knew

the effects of that would be to assess life imprisonment rather than death, do you agree with that, that that's his answer?

Mr. Thompson: I agree—

The Court: —Just misunderstand his answer?

Mr. Thompson: I agree that he said that.

The Court: Mr. Payne, I want to ask you, you understand again, and I want to make certain that you do understand this question, that you understand that in a capital murder case where a jury has found a defendant guilty of the offense of capital murder, that a jury has only two options—

A  Yes, sir.

The Court: —Either to assess life imprisonment or death, you understand that, that's the only two—

A  Yes.

—Options in a capital murder case that a jury has.  And is it your testimony that you would and could consider both options available by answering the questions as the law requires?

A  Both the options, right.

The Court: And, you would consider both of them?

A  The second option being if—if—I will—

The Court: If you felt that—

A  —I will—

The Court: If you felt either—

A  —

The Court: —Your answer to either of those questions, that I heretofore directed to you should be answered no, that the state had failed to prove beyond a reasonable doubt that you could answer yes to those questions, that you would answer each of them no, is that your—is that your ar—the one that was failed—in which they failed to prove beyond a reasonable doubt, you would answer that no, is that your answer?

A  If they can't prove it beyond a reasonable doubt—

The Court: And then would you conclude by that answer, tell this court that you

would consider the full range of punishment, that is either death or life imprisonment?

A   If they failed to prove the case, yes, sir.

The Court: If the state failed to prove it.

Mr. Knapp: Prove what case, sir?

A   Prove—prove the—failed to prove the case of capital murder.

Mr. Knapp: That's not the case, Your Honor.

The Court: Well, they failed to prove the two special issues that I've ask you by—preponderance—by—beyond a reasonable doubt, you would answer those questions no?

A   If he'll prove that the person only killed another person or they fail to prove that—the probability of committing future crimes—

The Court: Then you would answer it no?

A   No.

The Court: All right, I'll overrule it.

Mr. Thompson: Your Honor, I want to reurge then, and in saying that I feel like the court has so mingled the two questions, that I realize that you've ask the questions, but I think you've ask the questions including the punishment, thereby forcing the juror to answer the question that he could consider the full range of punishment. I feel that we are entitled to ask the juror whether or not he can consider the full range of punishment and disregard those two questions right now. The state can say can you give him this penalty, we ought to be able to say can you give life and forget about those two questions when we are asking that.

The Court: The state said that he could, though, counsel.

Mr. Thompson: The state is not—the state is not restricted by having to say can you give a death penalty by answering these questions yes or no, if they were, we'd have so many people that said they couldn't give a death penalty on the jury. By qualified, says well, if the court said—

The Court: The juror has stated, though, that he would consider both of them, he told the court that he would consider both punishments.

Mr. Thompson: —

The Court: Or death or—or—or life—death in the electric chair or life imprisonment, depending on what the evidence, the side reached at the punishment phase of the case. Now, is that your answer?

A   Yes, sir.

Mr. Thompson: Your Honor, I don't feel that the juror understands that question, may I—may I ask just one—that one simple question to give us the opportunity?

The Court: All right, I want you to give him your answer—you can ask that question again, I'll give you that opportunity.

By Mr. Thompson:

Q   When we were talking before, when you and Mr. Knapp were talking before, he ask you if you had any—

The Court: Who is questioning the juror—

Mr. Knapp: I was.

The Court: —

Mr. Thompson: —

By Mr. Knapp:

Q   Do you recall earlier when I explained to you that the trial was divided into two parts?

A   Yes, sir.

Q   And that at one part, if the jury found a criminal defendant guilty of capital murder, then they would have to consider punishment.

A   Yes, sir.

Q   At that point in the trial, let's assume that—hypothetical question, that you are a juror and the jury has come back with a unanimous verdict, which is the only way it could be returned, of guilty of capital murder. Capital murder has been assessed. It is the knowing and intentional taking of an individuals life, without justification or excuse, and it fits into one of those catagories, either in the commission—rape or robbery or burglary or a police officer or fireman

involved with the performance of their duties. That has been established at that point. Do you understand that?

A Yes.

Q There is no question about that, he knowingly and intentionally, it was murder it was capital—at that point and in that frame of mind, knowing that that had been done and you are on the jury, could you consider the imposition of a life sentence?

A I'll say—you are putting the question confusing—

Q No, sir, I'm not, but the capital murder, forget those two questions right now, if you will.

The Court: You are not talking about any particular fact situation?

Mr. Knapp: No particular fact situation.

A No.

Q Except capital murder had been established and you were one of the jurors that said "yes" we find him guilty of capital murder—

A —(No response.)

Q Could you consider life?

A Say a capital murder had been proven?

Q Yes, sir.

A Without a reasonable doubt?

Q Yes, sir?

A And the—the second was that—the probability the person could commit—

Q No, sir, no, I'm saying—

The Court: You don't have the right to go into that now—

Mr. Cummings: —

Mr. Knapp: Well, all right—

A Is this part of answering part of the question—

Q Well, if I may—I just want to know if you can, in your own mind consider a full range of punishment, if—if you've got capital murder and there is—beyond a reasonable doubt, can you consider, in your mind, the possibility of a life sentence, in a capital murder case that's been proved beyond a reasonable doubt?

A I'd say if it was proved beyond a reasonable doubt in a capital murder case I still go with the same thing—statement I made before.

Q What is that, sir?

A Death.

Q And that is the only—

A —It's proved beyond a reasonable doubt?

Q Yes, sir.

The Court: I want to make sure this juror understands that, because he started to say provided that he had answered the other two questions "yes".

A If I had it would have been proven beyond a reasonable doubt.

Mr. Thompson: —

The Court—

Mr. Cummings—

Mr. Knapp:—

Mr. Cummings: —The two questions are part of it—

Mr. Thompson:—

The Court: He said, and there is a probability that he would prob—that he would probably do it in the future, that is—he said that's part of the proof of this capital murder.

Mr. Knapp: No, Your Honor, that is not part of the proof.

The Court: Well, that's what he says in his answer, though.

Mr. Knapp: Well, that is not the definitation that would be used in this trial for it, Your Honor, or any capital murder case. Capital murder is the intentional knowing and taking of a—

The Court: Now, I'm not going to make any mistake on this, because I want to make sure this juror understands—

Mr. Knapp: That's what we are seeking—

The Court: All right, I understand that—you—you have stated that you—you could—if you the defendant guilty of capital murder, you understand that?

A  I—I understand that.

The Court: Now, you've said that you think death is a prop—proper punishment for capital murder?

A  That's right.

The Court: But, could you assess death or would you assess death if you were unable to answer these other two questions "yes"?

A  If you can't answer the other two questions "yes"—then he wouldn't be subject to death.

The Court: As far as you are concerned, that he is not—not subject to the death penalty, is that your answer?

A  Well, I tell you this, if you answer the first one "yes" then the second one is only as to whether he's going to commit future crimes or not.

The Court: And, if you answer that with a "yes" you think it's capital murder?

A  Capital murder.

The Court: And if you answer that with "no" you would not find him guilty of capital murder?

A  No, sir.

The Court: And then, you would not assess his punishment at death?

A  No, sir.  I wouldn't.—

The Court: All right.

Mr. Thompson: Not if what?

Mr. Knapp: Not if what?

A  I'm saying that—I understand that—

Q  Something about—

A  —What I'm saying is if the man was found, by myself and the other eleven jurors, as being guilty, beyond a reasonable doubt, and if we also had, or myself in particular, had assumed that he was going to commit future crimes, then my answer to both questions would be "yes".

Mr. Knapp:  Your Honor, we would again—

The Court: All right, I'll overrule your—

Mr. Knapp: —Reurge that our motion that this juror be striken from from—that he has unequivocally stated that he could not consider the minimum range of punishment.

The Court: All right, I'll overrule your objection, counsel.

Mr. Knapp: Thank you very much, Your Honor.