ACCEPTED
03-14-00516-CR
6639364
THIRD COURT OF APPEALS
AUSTIN, TEXAS
8/25/2015 11:56:06 AM
JEFFREY D. KYLE
CLERK

## NO. 03-14-00516-CR

## IN THE

## COURT OF APPEALS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

8/25/2015 11:56:06 AM

JEFFREY D. KYLE
Clerk

## FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS

_____

### MARK ANTHONY SERRANO,

Appellant.

### VS.

### THE STATE OF TEXAS,

Appellee.

_____

**From the 391ST Judicial District Court**
**Tom Green County, Texas**
**Honorable Barbara Walther, Judge Presiding**

_____

### BRIEF OF STATE

_____

### ORAL ARGUMENT REQUESTED ONLY
### IF REQUESTED BY THE COURT

JOHN BEST
Assistant District Attorney
51st Judicial District
124 W. Beauregard, Suite B
San Angelo, Texas 76903
(325) 659-6583
Texas State Bar # 00796203
ATTORNEY FOR STATE

# TABLE OF CONTENTS

**PAGE**

LIST OF AUTHORITIES ......................................................................... 2

STATEMENT OF FACTS ....................................................................... 5

SUMMARY OF THE ARGUMENT ............................................................ 9

ARGUMENT AND AUTHORITIES ........................................................... 12

CONCLUSION .................................................................................... 29

PRAYER ........................................................................................... 32

CERTIFICATE OF COMPLIANCE .......................................................... 33

CERTIFICATE OF SERVICE ................................................................. 33

# LIST OF AUTHORITIES

*Cases*

*Alvarado v. State*, 912 S.W.2d 199 (Tex. Crim. App. 1995) ..........................12

*Balentine v. State*, 71 S.W.3d 763 (Tex. Crim. App. 2002)............................13

*Barefield v. State*, 784 S.W.2d 38 (Tex. Crim. App. 1989)............................13

*Barshaw v. State*, 342 S.W.3d 91 (Tex. Crim. App. 2011)............................20

*Cantu v. State*, 842 S.W.2d 667 (Tex. Crim. App. 1992) ..............................16

*Colorado v. Connelly*, 479 U.S. 157, 169 (1986) ........................................12

*Davis v. United States,* 512 U.S. 452 (1994)................................................ 28, 29

*Dickerson v. United States*, 530 U.S. 428 (2000) .........................................12

*Edwards v. Arizona,* 451 U.S. 477 (1981)....................................................28

*Ex Parte Branch,* 553 S.W.2d 380 (Tex. Crim. App. 1977)...........................23

*Ex Parte Gonzalez*, 383 S.W.3d 162 (Tex. App.—San Antonio 2012, pet. ref'd) .............................................................................................................23

*Ex Parte Plumb,* 595 S.W.2d 544 (Tex. Crim. App. 1980)............................23

*Ex Parte Rubac*, 611 S.W.2d 848 (Tex. Crim. App. 1981)............................23

*Ex Parte Stansbery,* 702 S.W.2d 643 (Tex. Crim. App. 1986) ......................16

*Ex Parte Thompson,* 508 S.W.2d 624 (Tex. Crim. App. 1974) ......................23

*Flores v. State,* 299 S.W.3d 843 (Tex. Crim. App. 2009) ..............................19

*Hester v. State,* 544 S.W.2d 129 (Tex. Crim. App. 1976) ..............................16

*Hughen v. State,* 297 S.W.3d 330 (Tex. Crim. App. 2009) ............................19

*McNeil v. Wisconsin,* 501 U.S. 171 (1991) ................................................. 27, 28

*Michigan v. Jackson,* 475 U.S. 625 (1986) ......................................................17

*Michigan v. Mosley,* 423 U.S. 96 (1975) .........................................................28

*Miranda v. Arizona,* 384 U.S. 436 (1966) ................................................. 27, 28

*Montejo v. Louisiana,* 556 U.S. 778 (2009) ......................................... 17, 18, 19

*Morales v. State,* 32 S.W.3d 862 (Tex. Crim. App. 2000) .............................20

*Nonn v. State,* 117 S.W.3d 874 (Tex. Crim. App. 2003)................................20

*Patterson v. Illinois,* 487 U.S. 285 (1988).......................................................27

*Pecina v. State,* 361 S.W.3d 68 (Tex. Crim. App. 2012) ................................19

*Rocha v. State,* 16 S.W.3d 1 (Tex. Crim. App. 2000) .....................................15

*State v. Ross,* 32 S.W.3d 853 (Tex. Crim. App. 2000) ...................................13

### Codes

Tex. Code Crim. Proc. Ann. art. 17.15 (West 2015)............................... 22, 23

Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005)......................................11

### Constitutional Provisions

Tex. Const. Art. I, § 11a, subsection (a)(1) ......................................................25

# NO. 03-14-00516-CR

## IN THE

## COURT OF APPEALS

## FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS

_____

## MARK ANTHONY SERRANO,

**Appellant.**

## VS.

## THE STATE OF TEXAS,

**Appellee.**

_____

**From the 391ST Judicial District Court**
**Tom Green County, Texas**
**Honorable Barbara Walther, Judge Presiding**

_____

## BRIEF OF STATE

_____

TO THE HONORABLE COURT OF APPEALS FOR THE THIRD SUPREME JUDICIAL DISTRICT OF TEXAS:

COMES NOW, The State of Texas, in the above entitled and numbered cause, and files this the BRIEF OF STATE and in support thereof, the State would show this Honorable Court as follows:

## STATEMENT OF FACTS

Between November 11, 2013, and November 14, 2013, approximately $30,000 worth of furniture was reported stolen from Trend Furniture's warehouse in Tom Green County, Texas. (RR. Vol. 5, pp. 105-06, 141). On November 19, 2013, the Tom Green County Sheriff's Office, which handled the investigation, received a tip from a confidential informant (CI) who had seen some of the stolen property at Appellant's house located at 1411 South Irving. (RR. Vol. 3, pp. 160, 173). The CI advised Sheriff's Office detectives ("detectives") that additional stolen furniture was located at Appellant's mother's house. (CR. p. 6; RR. Vol. 3, p. 177). Based upon this information, detectives conducted surveillance on Appellant's house, where they observed thick, plastic, packing material consistent with the materials used by Trend Furniture to pack furniture in their warehouse. (RR. Vol. 3, pp.161–63, 177-79). On November 20, 2013, based on the evidence observed at Appellant's house, detectives applied for and were granted a search warrant to search for the stolen furniture in Appellant's home. (RR. Vol. 3, pp. 163–64).

Appellant was home when detectives executed the search warrant. (RR. Vol. 3, pp. 165–66). During execution of the warrant, detectives located and identified numerous items of stolen furniture belonging to

5

Trend Furniture. (RR. Vol. 3, p. 66; Vol. 5, pp. 23-27). While one team of detectives searched Appellant's home, another team proceeded to the house of Appellant's mother, located at 315 North Milton. (RR. Vol. 5, p. 39). Detectives located additional stolen property belonging to Trend Furniture at the North Milton location. (RR. Vol. 5, p. 39). Appellant was arrested that evening at his home without a warrant. (RR. Vol. 3, p. 200; RR. Vol. 5, pp. 23, 62). Over the next few weeks, detectives searched several other locations and recovered numerous additional items of furniture associated with the Trend Furniture burglary. (RR. Vol. 5, pp. 41–54).

On November 23, 2013, Appellant was arraigned before a magistrate and requested that an attorney be appointed to represent him. (CR. p. 8; RR. Vol. 3, p. 200). Appellant requested a court-appointed attorney and the magistrate appointed Shawntell McKillop to represent Appellant. (CR. p. 9; RR. Vol. 3, pp. 201-02). On November 25, 2013, a complaint was filed by Sheriff's Office Detective Ray Mellas. (CR. pp. 6-7).

On November 26, 2013, Appellant was taken from the Tom Green County Jail to the Sheriff's Office for questioning regarding the case. (RR. Vol. 3, p. 202). Prior to any questioning, Detective Martha Ibarra advised Appellant of his *Miranda* warnings. (SE. 87, t—1:03). Appellant stated that

6

he understood his rights and affirmatively waived those rights both orally and in writing. (SE. 87, t—1:03-1:04; RR. Vol. 3, pp. 192-94).

After receiving his first set of warnings, Appellant minimized his involvement in the case by telling Detective Ibarra that he had only purchased the property from an individual named "Aaron", whose last name Appellant did not know (SE. 87, t—1:20, 1:31), for $1,000 **(**SE. 87, t—1:35), knowing the property was stolen. (SE. 87, t—1:32; RR. Vol. 3, pp. 192-94). At one point, when Appellant expressed his discontent with his $200,000 bond, Detective Ibarra explained to Appellant that there must be more to the story to justify the bond. (SE. 87, t—1:29). Appellant noted that he could make the bond. (SE. 87, t—1:33). Appellant repeatedly expressed concern that cooperating and giving a statement might result in an organized crime charge given the involvement of multiple co-defendants. (SE. 87, t—1:32).

As detectives continued to question Appellant, Detective Bloom informed Appellant that Appellant was not being cooperative and that Appellant's level of cooperation with the investigation would be conveyed to the prosecuting attorney. (SE. 87, t—1:40-1:41). When Appellant asked Detective Bloom whether cooperating would get him out of trouble, Detective Bloom explained to Appellant that cooperation would not get

Appellant completely out of trouble. (SE. 87, t—1:41). Appellant subsequently asked whether cooperation would result in his bond being reduced. (SE. 87, t—1:42). Detective Bloom told Appellant that his level of cooperation would be conveyed to the prosecutor. (SE. 87, t—1:42). Detective Mellas told Appellant, "I can't say 'yes' or 'no'." (SE. 87, t—1:42).

At one point during the course of questioning Appellant, Detective Billy Bloom asked Appellant if Appellant had an attorney. (SE. 87, t—1:42-1:43). Appellant responded that Appellant did not have an attorney (SE. 87, t—1:43). When Detective Ibarra explained to Appellant that his untruthful statements up until that point showed a lack of cooperation, Appellant requested that the questioning "start all over." (SE. 87, t—1:43). Detective Bloom removed Appellant's handcuff's and asked Appellant to start telling the truth. (SE. 87, t—1:43-1:44). Detective Ibarra *Mirandized* Appellant a second time, and Appellant again waived his rights both orally and in writing. (SE. 87, t—1:44). Appellant subsequently confessed to stealing furniture from the Trend Furniture warehouse and acknowledged that the furniture seized during the search of his house, and the furniture seized from his mother's house, had also been stolen from Trend Furniture. (SE. 87, t—1:45-2:13). Appellant also acknowledged the involvement of multiple co-defendants in the thefts. (SE. 87, t—1:45-2:13).

At trial, Appellant made an oral motion to suppress Appellant's statement to detectives based on a claim that the statement was not voluntary and was obtained in violation of Appellant's right to counsel under the 6th Amendment. (RR. Vol. 3, pp. 169-70). The trial court denied Appellant's motion to suppress. (RR. Vol. 3, p. 212). Regarding this issue, the trial court found that Appellant had voluntarily, knowingly and intelligently waived his rights, and that Appellant's statement was admissible. (RR. Vol. 3, p. 212). The trial court noted that Appellant was twice advised of his rights prior to giving his statement, twice signed a card indicating that he understood his rights, and never requested an attorney during questioning. (RR. Vol. 3, p. 212).

Appellant's statement was admitted at trial. (RR. Vol. 3, p. 196). After all evidence was presented, the jury found Appellant guilty of theft as alleged in the indictment (RR. Vol. 6, p. 129) and ultimately sentenced Appellant to twenty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice. (RR. Vol. 6, pp. 166-67).

## SUMMARY OF THE ARGUMENT

The trial court did not err in denying Appellant's motion to suppress the statement made by Appellant's to detectives. Based upon the totality of

the circumstances, the procedural violations of the magistrate in failing to magistrate Appellant, and appoint an attorney, within the prescribed timeframes, did not amount to official, coercive conduct of such a nature as to render Appellant's statement unlikely to have been the product of an essentially free and unconstrained choice. The record does not support Appellant's assertion that violations of Article 15.17, 17.033 or 17.15 of the *Texas Code of Criminal Procedure*, or Sections 10 or 13 of the *Texas Constitution*, acted to create an "improper compelling environment for interrogation" that rendered Appellant's statement to detectives involuntary.

The Court of Criminal Appeals has refused to accept the notion that a delay or failure to be taken before a magistrate is sufficient cause, in and of itself, to suppress an otherwise voluntary statement. Appellant must show a causal connection between his confession and any delay in being taken before the magistrate, and being appointed of counsel, under Article 15.17 of the *Texas Code of Criminal Procedure*.

At the time Appellant provided his statement to detectives, he was lawfully under arrest pursuant to the filing of a complaint supported by probable cause. Prior to giving his statement, Appellant was twice read his *Miranda* warnings by detectives. On both occasions during the same interview, Appellant orally, and in writing, freely and voluntarily agreed to

10

waive those rights and provide a statement. There is no evidence that Appellant was coerced or threatened into giving his statement. At no time did Appellant make an expression of need or desire to be assisted by counsel. Appellant has not met his burden of showing a causal connection between the procedural errors and the voluntariness of his statement.

Appellant also fails to establish that the magistrate set Appellant's bond at an amount intended to coerce Appellant into giving a statement. The information provided in the probable cause portion of the complaint filed by Detective Mellas, and relied upon by the magistrate in exercising her broad discretion in setting Appellant's bond, indicates the nature and circumstances of the offense alone justified the bond amount. Despite Appellant's assertions to the contrary, nothing in the record supports the claim that the magistrate used, or intended to use, the bond amount as an instrument of oppression. Furthermore, the record does not support Appellant's assertion that the amount of the bond influenced the voluntariness of Appellant's statement.

Therefore, this Court should affirm the trial court's decision not to suppress Appellant's confession on the grounds that it was freely and voluntarily given.

## ARGUMENT AND AUTHORITIES

In determining whether to suppress Appellant's statement, the trial court was required to determine whether Appellant's statement was given voluntarily or was coerced. *See* Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005) (stating that "[a] statement of an accused may be used as evidence against him if it appears that the statement was freely and voluntarily made without compulsion or persuasion"). A statement is involuntary for due process purposes only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995). "Absent [coercive] police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." *Id.* (quoting *Colorado v. Connelly*, 479 U.S. 157, 169 (1986)). The essential question the trial court was required to determine was "whether [appellant's] will was overborne by the circumstances surrounding the giving of [the] confession." *See Dickerson v. United States*, 530 U.S. 428, 434 (2000). In making this determination, the trial court was required to examine the totality of the circumstances

surrounding it.  *See Barefield v. State*, 784 S.W.2d 38, 40-41 (Tex. Crim. App. 1989).

In considering whether the trial court abused its discretion in declining to suppress Appellant's statement, this Court should give "almost total deference to a trial court's determination of the historical facts" and review the court's application of the law to the facts *de novo*.  *See Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).  Where the trial court has not made explicit findings of historical fact, as in this case, this Court should review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support the ruling.  *Id.*  Furthermore, the ruling of the trial court should be sustained if it is correct under any theory of law applicable to the facts of the case.  *See State v. Ross*, 32 S.W.3d 853, 855-56 (Tex. Crim. App. 2000).

## I. Appellant's statement was not the result of official, coercive conduct on the part of detectives that would make Appellant's statement unlikely to have been the product of an essentially free and unconstrained choice.

The record contains no evidence that detectives engaged in "official, coercive conduct of such a nature" that Appellant's statement was "unlikely

to have been the product of an essentially free and unconstrained choice." Before initially questioning Appellant, detectives provided *Miranda* warnings to Appellant. (SE. 87, t—00:45-1:25). After receiving his first set of warnings, Appellant minimized his involvement to detectives. (SE. 87, t—1:20-2:17). When detectives explained that they already had evidence of Appellant's more substantial role in the thefts, and that Appellant was not helping himself by continuing not to cooperate, Appellant inquired as to whether his cooperation would result in a lower bond. (SE. 87, t—40:23). Detective Bloom made no promises with regard to the lowering of Appellant's bond, but did explain that Appellant's level of cooperation would be conveyed to the prosecutor. (SE. 87, t—40:23). Detective Mellas told Appellant that Mellas couldn't say "yes" or "no" as to whether cooperation would result in a lower bond for Appellant. (SE. 87, t—40:30). Appellant subsequently requested that the questioning "start all over," at which time detectives *Mirandized* Appellant a second time, and Appellant again waived his rights and confessed. (SE. 87, t—41:50).

The video of Appellant's confession reveals that while he was being questioned, Appellant was not subjected to any type of coercive law enforcement conduct that made his statement involuntary. Before Appellant gave his second *Mirandized* statement, his handcuffs were

14

removed.  Appellant was not deprived of food, beverage, or the opportunity to visit the restroom.  Although Appellant was upset about the fact that he was in custody, Appellant appeared to be calm during the interviews and, although initially untruthful, was cooperative.  Appellant never asked to speak with an attorney or to terminate the interview, even though he was informed of his right to do so on two occasions.  There is no indication that any detective threatened Appellant or otherwise acted inappropriately.

## II. No causal connection exists between the failure to take Appellant before a magistrate within the prescribed timeframe pursuant to Article 15.17 and Appellant's waiver of his rights and subsequent confession.

Appellant contends his statement to detectives should be suppressed based upon the delay between the time Appellant was arrested and the time Appellant was appointed counsel.  (Brief of Appellant at 17-18). Appellant asserts that without this delay, "it is reasonable to assume" that counsel would have been appointed, that counsel would "likely" have visited with Appellant, and Appellant would not have confessed.  (Brief of Appellant at 18).

The Court of Criminal Appeals has consistently held that a violation of Article 15.17 does not automatically invalidate a confession.  *See Rocha v.*

15

*State*, 16 S.W.3d 1, 29-30 (Tex. Crim. App. 2000); *Cantu v. State*, 842 S.W.2d 667, 680 (Tex. Crim. App. 1992). Appellant bears the burden of proof to show a causal connection between his confession and the failure to take Appellant promptly before a magistrate. *See Ex Parte Stansbery,* 702 S.W.2d 643, 647 (Tex. Crim. App. 1986). The burden of proof to show this causal connection has even been extended to situations in which a defendant provided a statement before ever being taken before a magistrate by an arresting officer. *See Hester v. State,* 544 S.W.2d 129, 134-135 (Tex. Crim. App. 1976). In both *Stansbery* and *Hester,* the Court upheld the validity of the statements in question due to the lack of a causal connection between the voluntary statements and the alleged procedural errors. *See Ex Parte Stansbery,* 702 S.W.2d at 647–649, *Hester,* 544 S.W.2d at 134-135.

In the present case, Appellant has made no showing that the delay in being taken before the magistrate was causally connected to Appellant's voluntary statement. When Appellant appeared before the magistrate on November 23, 2013, he was advised of his rights pursuant to Article 15.17. (CR. at 8). Three days later, Appellant provided detectives with a voluntary statement only after detectives twice advised Appellant of his constitution rights under *Miranda*. (RR. Vol. 3, p. 202; Vol. 5, pp. 190-94).

16

Appellant offers no evidence that the delay in his magistration had any effect on Appellant's decision to waive his rights and provide a statement. Instead, Appellant only asserts the conclusion that the delays created a coercive environment, which, coupled with the bond set by the magistrate, made Appellant's statement involuntary. (Brief of Appellant at 22-31). Appellant asserts that, had the magistrate appointed an attorney prior to Appellant confessing on November 26, 2013, Appellant's counsel "would likely have visited with Appellant prior to his confession . . . and Appellant would not have made the confession." (Brief of Appellant at 18). However, by the time Appellant gave his statement on November 26, 2013, he had been advised of his right to counsel at least twice prior to giving his statement. Given these circumstances, the trial court cannot be said to have abused its discretion in refusing to suppress Appellant's statement.

**III. Neither Appellant's request for counsel, nor his actual appointment of counsel, rendered his statement invalid.**

According to the United States Supreme Court, a defendant may knowingly and voluntarily waive his or her Sixth Amendment right to counsel even after arraignment and request for counsel. *Montejo v. Louisiana,* 556 U.S. 778, 792 (2009). In *Montejo*, the Court overruled its previous holding in *Michigan v. Jackson,* 475 U.S. 625 (1986), in which it

held that a presumption exists that a defendant who had been arraigned or appointed counsel could not voluntarily waive his right to counsel during custodial interrogation. *Id.* at 789–793. According to the Court in *Montejo*, a defendant's decision to waive his right to counsel does not itself need to be counseled. *Id.* at 786. The Court held that "it would be completely unjustified to presume that a defendant's consent to police-initiated interrogation was involuntary or coerced simply because [the defendant] had previously been appointed a lawyer." *Id.* at 792. The Court went on to state, "[a]nd when a defendant is read his *Miranda* rights (which include the right to have counsel present during interrogation) and agrees to waive those rights, that typically does the trick . . . ." *Id.* at 786. The Court further stated that after the right to counsel attaches, "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings." *Id.* at 794. The Court noted that the immediate contact must end at that point, along with any subsequent "badgering" through additional requests for questioning. *Id.* at 794-95.

In the present case, whether or not Appellant had been appointed counsel, or whether Appellant had knowledge that he had been appointed counsel prior to questioning by detectives, is irrelevant under the Court's

holding in *Montejo*. The presumption under *Jackson* no longer exists to invalidate Appellant's voluntary statement. Appellant's repeated knowing and voluntarily waiver of his *Miranda* rights prior to providing a statement to detectives controls.

The Texas Court of Criminal Appeals has followed the Supreme Court's refusal to presume a defendant's consent to interrogation was involuntary or coerced simply due to his appointment of counsel. *See Flores v. State,* 299 S.W.3d 843, 851-52 (Tex. Crim. App. 2009) (citing *Montejo v. Louisiana,* 556 U.S. 778, 792 (2009)); *see also Hughen v. State,* 297 S.W.3d 330, 334-35 (Tex. Crim. App. 2009); *Pecina v. State,* 361 S.W.3d 68, 78-81 (Tex. Crim. App. 2012)(recognizing that "[w]hen a person is brought before a magistrate, told that he is formally accused of committing a crime, and asked if he wants a lawyer to represent him in those criminal proceedings, that is an entirely different question from whether he wants a lawyer to be with him during any police questioning"). Absent any showing by Appellant of improper coercion by law enforcement officers during interrogation, or any causal connection between statements made by Appellant and the delay in the appointment of counsel, the statements made by Appellant during custodial interrogation should not be suppressed.

Appellant argues that the delays in arraignment and appointment of counsel affected the substantial right of Appellant to have access to an attorney, requiring a harm analysis under *Texas Rule of Appellate Procedure* 44.2(b). (Appellant Brief at 20). However, Appellant was advised of his right to counsel on two occasions prior to giving his statement to detectives. Each time, Appellant waived his rights and never invoked his right to counsel.

According to the Texas Court of Criminal Appeals, a harm analysis under Rule 44.2(b) requires the reversal of a conviction for non-constitutional error if the appellate court finds that there was substantial or injurious effect on the jury's verdict. *Barshaw v. State*, 342 S.W.3d 91, 93-94 (Tex. Crim. App. 2011); s*ee also Nonn v. State*, 117 S.W.3d 874, 881 (Tex. Crim. App. 2003); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). While Appellant's right to an attorney is a substantial right, no evidence supports Appellant's contention that this right was affected by any delay in either the arraignment or appointment processes. The substantial right in the present case is not whether the Appellant had access to his appointed counsel, but instead, whether Appellant had knowledge of his right to counsel during his interrogation.

In the present case, Appellant was advised of his *Miranda* warnings before any questioning took place, and again when Appellant requested that he be allowed to start the interrogation over. (SE 87, t—1:43). On each occasion, Appellant acknowledged that he understood the warnings and subsequently waived his rights. Appellant was made aware of his right to counsel on each occasion. At no time was Appellant prohibited from invoking his right to counsel, nor was there any indication by Appellant that would suggest that he wished to invoke his right to counsel. The actions of the magistrate did not affect Appellant's knowledge of his right to counsel or his ability to invoke that right. Therefore, Appellant's statements could be relied upon by the jury without substantial or injurious effect, thereby failing the harm analysis under Texas Rule of Appellate Procedure 44.2(b).

**IV. The record contains no evidence that the amount of the bond set by the magistrate was unreasonable or rendered Appellant's statement involuntary.**

Appellant complains that pursuant to Texas Code of Criminal Procedure, Article 17.033(b), he should have been released from custody within 48 hours of arrest. (Brief of Appellant at 23). According to Appellant, the fact that Appellant was not released made his continued detention unreasonable. (Brief of Appellant at 24). However, on November 25,

21

2013, detectives filed a sworn complaint supported by probable cause, and the magistrate issued a valid warrant for Appellant's arrest. At that point, any violation of Article 17.033(b) became moot. Although Appellant asserts that the magistrate "issued an untimely arrest warrant in an attempt to retroactively correct her mistakes" and that the magistrate's actions are "evidence that the State had knowledge and intent" to violate Appellant's rights, this unfounded conclusion is not supported by the record. The record simply reflects that on November 25, 2013, detectives filed a complaint and the magistrate issued a warrant and set a bond. There exists no evidence of animus on the part of the magistrate or detectives in this procedural undertaking.

Appellant also asserts that the magistrate violated Article 17.15 of the *Texas Code of Criminal Procedure* and Section 13 of the *Texas Constitution* by setting an excessively high bond for a third degree felony. (Brief of Appellant at 20-21). According to Appellant, the magistrate's failure to release Appellant pursuant to Article 17.033(b), coupled with the amount of Appellant's bond, subjected Appellant to an "environment of compulsion" which combined to make Appellant's statement involuntary. (Brief of Appellant at 22). Appellant further asserts that the magistrate set a high bond to keep Appellant from making bail, and disregarded the

legitimate factors which may be considered in setting bond pursuant to Article 17.15.  (Brief of Appellant at 29).

No evidence exists in the record to support Appellant's conclusion that the magistrate abused her discretion in setting Appellant's bond.  In Texas, a magistrate may consider many factors in assigning the amount of bail. *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2015); *Ex Parte Branch,* 553 S.W.2d 380, 382 (Tex. Crim. App. 1977); *Ex Parte Plumb,* 595 S.W.2d 544, 546 (Tex. Crim. App. 1980); *Ex Parte Thompson,* 508 S.W.2d 624, 625 (Tex. Crim. App. 1974).  According to the Texas Court of Criminal Appeals, in setting bond, a magistrate may consider the work record, family ties, and length of residency of the accused, as well as prior criminal record and conformity with prior bond conditions.  *Ex Parte Rubac*, 611 S.W.2d 848 (Tex. Crim. App. 1981); *see also Ex Parte Gonzalez*, 383 S.W.3d 162 (Tex. App.—San Antonio 2012, pet. ref'd)(outlining factors magistrate may consider in setting bond as including nature and possible sentence associated with offense, defendant's ties to community, length of residency, employment history, prior criminal record, compliance with prior bonds, and aggravating factors involved in alleged offense).  Article 17.15 of the *Texas Code of Criminal Procedure* specifically provides that "[t]he nature of the

23

offense and the circumstances under which it was committed are to be considered." *See* Tex. Code Crim. Proc. Ann. art. 17.15 (West 2015).

In the present case, the record does not reflect which factors the magistrate took into consideration in setting Appellant's bond. Although Appellant cites a number of offenses for which Appellant was previously convicted, nothing in the record indicates what, if any, of this information was relayed to the magistrate. The record does, however, reflect that Appellant was charged by complaint with burglarizing a local business with several co-defendants, and stealing a large amount of property. (CR. pp. 6-7). According to the complaint, the property stolen included new and used furniture and was valued at approximately $30,000. (CR. p. 6). Furthermore, according to the probable cause affidavit supporting the complaint, at least four individuals, including Appellant, were involved in the theft and a charge of organized crime was considered. (CR. p. 6; SE 87, t—1:32-1:33).

Given the nature and circumstances of the offense, including the number of people involved, the quantity of property involved, and the value of the property stolen, the magistrate did not abuse her discretion in setting Appellant's bond. Although Appellant cites numerous reasons why Appellant's bond should have been set lower, the record contains no

24

evidence that the magistrate had knowledge of this information at the time bond was set. No bond hearing was requested by Appellant, and none of this information was articulated in the probable cause affidavit and complaint filed by detectives. In fact, had the magistrate been aware of Appellant's criminal history at the time bond was set, bond could have been denied pursuant to Tex. Const., Art. I, § 11a, subsection (a)(1) based upon Appellant's two prior sequential felony convictions for Robbery and Driving While Intoxicated. *See* Tex. Const. Art. I, § 11a, subsection (a)(1).

Given the nature and circumstances of the offense committed by Appellant and his colleagues, the bail set by the magistrate was not unreasonable. There is simply no evidence to support Appellant's claim that the magistrate set the amount of Appellant's bond to coerce or influence Appellant into making a statement to detectives. Furthermore, the context of Appellant's repeated waiver of his rights during questioning reveals that his statement to detectives was freely and voluntarily given.

Appellant asserts that statements made by Detectives Ibarra and Mellas during Appellant's interrogation reveal evidence that the magistrate set Appellant's bond with the intent to compel a confession. (Brief of Appellant at 29). Appellant assert that statements made by Detective Ibarra and Mellas to Appellant during questioning "give the inference that a

portion of Appellant's bail amount is intended to pressure him into making a statement against himself or other co-defendants." (Brief of Appellant at 30). However, when the statements of Detective Ibarra and Mellas are considered in context, they do not reflect any intention to pressure or coerce Appellant. Ibarra's statement to Appellant that "there is more to this than you are telling me" reflected nothing more than a common sense observation by Ibarra that the magistrate must have set Appellant's high bond based upon Appellant's involvement in the case. Likewise, Detective Mellas' comment to Appellant that "your $200,000 bond is not set by mistake" reflects nothing more than a common sense observation by Detective Mellas that a magistrate would not set Appellant's bond at $200,000 without having been presented with evidence involving the serious nature and circumstances of the offense.

Despite Appellant's assertions to the contrary, the comments of Detectives Ibarra and Mellas do not support the conclusion that the magistrate set Appellant's bond based upon anything other than the legitimate objectives outlined in Article 17.15 and by caselaw. Appellant was provided with *Miranda* warnings when he was first arrested, when he went before the magistrate, and again twice by detectives before he

26

provided his statement. Appellant was aware of his rights and freely and voluntarily waived those rights when he gave his statement.

**V. The trial court properly denied Appellant's Motion to Suppress Appellant's statement to detectives because the statement was made voluntarily and without coercion or undue pressure.**

Under *Miranda*, law enforcement officers are required to inform those accused of crimes of their constitutional rights during custodial interrogations to prevent law enforcement from coercing suspects to make statements in an admittedly coercive environment. *Miranda v. Arizona,* 384 U.S. 436, 467–473 (1966). The Court in *Miranda* required that waivers be signed by defendants who knowingly and intelligently waive their constitutional rights. *Id.* at 492–493; s*ee also Patterson v. Illinois,* 487 U.S. 285, 296 (1988)(holding *Miranda* warnings sufficient to adequately inform defendant of Sixth Amendment rights for the purposes of knowingly and intelligently waiving those rights, in addition to consequences that may occur if said rights are abandoned). Once a defendant has been informed of their Constitutional rights through the use of *Miranda* warnings, any voluntary statements made after waiving those rights is admissible. *McNeil v. Wisconsin,* 501 U.S. 171, 176 (1991). The Appellant in the present case waived his rights twice before giving his statement.

Under the holding in *Miranda*, a defendant may invoke his constitutional right to remain silent, or to request an attorney at any time during custodial interrogation, stopping any and all questioning once such a request or invocation has occurred. *Miranda* 384 U.S. at 473 –475; s*ee also Michigan v. Mosley,* 423 U.S. 96, 100–101 (1975) (reaffirming presumption that any statements made after invocation of *Miranda* rights amounts to compulsion); *Edwards v. Arizona,* 451 U.S. 477 (1981) (reaffirming requirement to cease all interrogations after the rights to counsel or silence has been invoked). Again, in the present case, Appellant signed two different waivers during his custodial interrogation. Appellant never indicated that he was unaware of his rights, nor did he indicate an intention or desire to speak to an attorney or remain silent during the interrogation. Appellant instead demonstrated a willingness to speak to detectives, fully aware of his right to remain silent and his right to counsel. Appellant made no unambiguous or unequivocal expression of the desire of assistance by counsel as required by the Supreme Court. *Davis v. United States,* 512 U.S. 452, 459–460 (1994); s*ee also McNeil v. Wisconsin,* 501 U.S. 171, 178 (1991) (noting that the likelihood that defendant may want assistance from counsel is insufficient to trigger cessation of interrogation absent any expression of that desire).

The Supreme Court does not require law enforcement officers to clarify any ambiguity by Appellant in his expression of assistance by counsel, placing the burden upon Appellant to make a reasonably understood invocation. *Davis,* 512 U.S. at 459–460. In the present case, Appellant voluntarily waived his rights and made no assertion during interrogation that could have been reasonably understood as requesting the assistance of counsel. For this reason, the trial court properly denied Appellant's motion to suppress his statement.

## CONCLUSION

Based upon the totality of the circumstances, Appellant's statement in the present case was voluntarily given. The magistrate made procedural mistakes in failing to magistrate Appellant, and appoint counsel, within the prescribed timeframes. These actions, however, did not amount to official, coercive conduct of such a nature as to render Appellant's statement unlikely to have been the product of an essentially free and unconstrained choice. The record does not support Appellant's assertion that violations of Article 15.17, 17.033 or 17.15 of the *Texas Code of Criminal Procedure*, or Sections 10 or 13 of the *Texas Constitution*, acted to create an "improper compelling environment for interrogation" that rendered Appellant's statement to detectives involuntary.

The Court of Criminal Appeals has refused to accept the notion that a delay or failure to be taken before a magistrate is sufficient cause, in and of itself, to suppress an otherwise voluntary statement. Appellant must show a causal connection between his confession and any delay in being taken before the magistrate, and being appointed of counsel, under Article 15.17 of the *Texas Code of Criminal Procedure*.

At the time Appellant provided his statement to detectives, he was lawfully under arrest pursuant to the filing of a complaint supported by probable cause. Prior to giving his statement, Appellant was twice read his *Miranda* warnings by detectives. On both occasions during the same interview, Appellant orally, and in writing, freely and voluntarily agreed to waive those rights and provide a statement. There is no evidence that Appellant was coerced or threatened into giving his statement. At no time did Appellant make an expression of need or desire to be assisted by counsel. Appellant has not met his burden of showing a causal connection between the procedural errors and the voluntariness of his statement.

Appellant also fails to establish that the magistrate set Appellant's bond at an amount intended to coerce Appellant into giving a statement. The information provided in the probable cause portion of the complaint filed by Detective Mellas, and relied upon by the magistrate in exercising

30

her broad discretion in setting Appellant's bond, indicates the nature and circumstances of the offense alone justified the bond amount. Despite Appellant's assertions to the contrary, nothing in the record supports the claim that the magistrate used, or intended to use, the bond amount as an instrument of oppression. Furthermore, the record does not support Appellant's assertion that the amount of the bond influenced the voluntariness of Appellant's statement.

Given the totality of the circumstances surrounding Appellant's confession, the trial court did not abuse its discretion in denying Appellant's motion to suppress. While the record indicates that the magistrate did not comply with all of the procedural requirements of Article 15.17 in magistrating Appellant and appointing an attorney, the record does not support Appellant's assertions that the magistrate's actions affected the voluntariness of Appellant's statement. Nothing in the interaction between Appellant and detectives, or the actions of the magistrate, suggest that Appellant was "overborne" by the circumstances surrounding the confession such that it was unlikely the product of Appellant's free and unconstrained choice. Therefore, the trial court did not abuse its discretion in overruling Appellant's motion to suppress his statement to detectives.

31

## **PRAYER**

WHEREFORE, the State prays this Court overrule the issue presented by Appellant and Affirm the Judgment of the trial court for the reasons stated herein.

Respectfully Submitted,
ALLISON PALMER
51ST DISTRICT ATTORNEY


_____
JOHN BEST
Assistant District Attorney
51st Judicial District
124 W. Beauregard, Suite B
San Angelo, Texas 76903
(325) 659-6583
TSB# 00796203
ATTORNEY FOR STATE

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), I hereby certify, based upon the computer program used to generate this brief, that this brief contains 5,762 words, excluding words contained in those parts of the brief that Rule 9.4(i) exempts from inclusion in the word count. I further certify that this brief is in a conventional 14-point typeface.

_____
JOHN BEST
Assistant District Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2015 a true and correct copy of the foregoing Brief of State was electronically served on Randol Stout at rls2700@gmail.com, Attorney for Appellant, through e-file.txcourts.gov.
.

_____
JOHN BEST
Assistant District Attorney